**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
**JOE HAND PROMOTIONS, INC.,**

                   **Plaintiff,**                 **REPORT AND**
                                                           **RECOMMENDATION**
                 **-against-**
                                                           **07-CV-2339 (RRM)**
**143-08 94th CORP.,** *doing business as*
**KALUA RESTAURANT & LOUNGE,**
*also known as* **KALUA CABARET, and**
**ROGER A. DURAN,**

                 **Defendants.**
-------------------------------------------------------------------x

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

      Joe Hand Promotions, Inc. ("plaintiff") commenced this action against 143-08 94th Corp., d/b/a Kalua Restaurant & Lounge, a/k/a Kalua Cabaret ("Kalua"), and Roger A. Duran ("Duran"), individually and as principal of Kalua (collectively, "defendants"), alleging violations of the Communications Act, 47 U.S.C. § 151 *et seq*. Specifically, the complaint alleges that on June 11, 2005, defendants intercepted plaintiff's scrambled satellite and/or cable transmission of a boxing match and exhibited it for their own financial benefit. See Complaint ("Compl.") at ¶¶ 15-16.

      Defendants were properly served, but never filed answers or otherwise appeared in the action. Accordingly, on February 11, 2008, the Honorable Roslynn R. Mauskopf granted plaintiff's motion for default judgment and referred the application for damages to the undersigned magistrate judge. See 2/11/08 Default Judgment. For the reasons that follow, this Court recommends that judgment be vacated as to defendant Duran, and that plaintiff be

awarded $13,220 in damages and litigation costs against defendant Kalua.

## BACKGROUND

The June 11, 2005 boxing match between Mike Tyson and Kevin McBride was broadcast live by closed-circuit television and encrypted satellite signal. Compl. at ¶ 8. Plaintiff acquired the exclusive right to distribute the match, along with undercard bouts, in New York State. Id. at ¶¶ 8-9. The signal carrying the match originated as a satellite transmission, and was re-transmitted to cable and satellite systems by satellite signal. See id. at ¶¶ 12, 14. Any business in New York State seeking to show the match was required to pay plaintiff for the rights. Id. at ¶ 10. Only those authorized to do so were permitted to receive or broadcast the match. Id. at ¶¶ 13-14.

During the broadcast of the Tyson-McBride fight, Sophie Taggart ("Taggart"), an auditor working for an investigation agency retained by plaintiff, entered certain Queens establishments to determine which if any were exhibiting the bout without plaintiff's permission. See Transcript of May 8, 2008 Hearing ("Tr.") at 15-16. In those establishments that were exhibiting without authorization, Taggart counted the number of people present and submitted an affidavit based on her findings. See id. at 10-11; see also Affidavit of Sophie Taggart ("Taggart Aff.") filed May 15, 2008. Among the offending establishments visited by Taggart was Kalua, a strip club located at 143-08 94th Avenue. Tr. at 6-7; see also Compl. at ¶¶ 13, 19 (stating that Kalua did not have permission to exhibit the bout). Taggart paid a cover charge of $10 to enter the club and purchased an alcoholic beverage. Tr. at 9; Taggart Aff. at 2 ¶ 9. According to Taggart, there were approximately forty-five men on the premises,

where she observed, on one television, a portion of the Tyson-McBride fight. Tr. at 8-9, 12. She also noted that several female dancers performed topless as the fight was being broadcast. Tr. at 8, 13-14.

Plaintiff contends that defendants, who were not authorized to receive or broadcast the match, used an illegal or modified satellite receiver and/or cable converter box to intercept plaintiff's broadcast and display it for their own financial gain. See Compl. at ¶¶ 13, 15-16, 19.

## DISCUSSION

### I. Liability

A defendant in default is deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability. Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). Accordingly, the Court will first consider whether the complaint states a cause of action against defendants under 47 U.S.C. § 605.[1]

### A. Section 605(a)

Section 605(a) provides in pertinent part that:

---

[1] Although the complaint alleges that defendants violated both 47 U.S.C. § 605 and 47 U.S.C. § 553, plaintiff seeks damages only under section 605. See Plaintiff's Memorandum of Law ("Pl. Mem.") at 4-6. The Court therefore need not consider liability or damages under section 553. See generally Int'l Cablevision, Inc. v. Sykes, 997 F.2d 998, 1009 (2d Cir. 1993) (damages are available under only one statutory section, notwithstanding defendant's possible violation of both); Kingvision Pay-Per-View, Ltd. v. Mendez, No. 03-CV-2170 (NGG), 2006 WL 3833014, at *3 (E.D.N.Y. Dec. 28, 2006) (same); Garden City Boxing Club, Inc. v. Mercado, No. 05 Civ. 7608 (DC), 2006 WL 3040947, at *2 (S.D.N.Y. Oct. 26, 2006) (same).

> No person not being authorized by the sender shall intercept any
> radio communication and divulge or publish the . . . contents . . .
> of such intercepted communication to any person.

47 U.S.C. § 605(a). Section 605's application to radio communications has been interpreted to include satellite transmissions. See, e.g., DirectTV, Inc. v. Rodriguez, No. 03-CV-4590 (ARR), 2007 WL 1834676, at *1 (E.D.N.Y. June 26, 2007) ("radio communications . . . includes satellite signals"); Kingvision Pay Per View, Ltd. v. Williams, 1 F.Supp.2d 1481, 1484 (S.D. Ga. 1998) ("The term 'radio' includes satellite transmissions."). As such, courts in this circuit have uniformly held that section 605 applies in circumstances where, as here, a party is charged with the unauthorized interception and exhibition of either satellite television programming, or cable television programming that originated as a satellite transmission. See, e.g., Garden City Boxing Club, Inc. v. Frezza, 476 F.Supp.2d 135, 138-39 (D.Conn. 2007); J&J Sports Prods., Inc. v. Rodrigues, No. 05-CV-5805 (RJD), 2007 WL 1726462, at *3 (E.D.N.Y. Apr. 19, 2007); Garden City Boxing Club, Inc. v. Polanco, No. 05 Civ. 3411 (DC), 2006 WL 305458, at *3-4 (S.D.N.Y. Feb. 7, 2006). In this case, plaintiff alleges that its satellite and cable broadcast of the boxing match originated as a satellite uplink. See Compl. at ¶¶ 12, 14. Thus, plaintiff's complaint adequately alleges a violation of section 605.

### B. Liability of the Individual Defendant

A reasonable basis exists for holding Kalua liable for the claimed violation: Kalua was not authorized to broadcast the Tyson-McBride fight, and Taggart's testimony demonstrates that it nevertheless did so. This Court is not similarly satisfied, however, that a reasonable basis exists to hold Duran individually liable for that same violation. Plaintiff's complaint

alleges, without more, that Duran owns Kalua. See Compl. at ¶ 6. Furthermore, neither Taggart's testimony nor the exhibits submitted in support of plaintiff's motion elaborate any further on Duran's role in Kalua's operation or in the claimed violation.

Duran's ownership of Kalua does not, by itself, provide a sufficient basis upon which to hold him individually liable for the violation alleged in the complaint. See J&J Sports Prods., Inc. v. Daley, No. 06-CV-238 (ERK), 2007 U.S. Dist. LEXIS 49839, at *8-11 (E.D.N.Y. Feb. 15, 2007) (finding owner not individually liable where plaintiff failed to demonstrate sufficient control or financial interest in the violation). Rather, to hold Duran contributorily liable, plaintiff must demonstrate that he "authorized" Kalua's violation. Kingvision Pay-Per-View Ltd. v. Olivares, No. 02 Civ. 6588 (JES), 2004 WL 744226, at *5 (S.D.N.Y. Apr. 5, 2004) (citing Softel Inc. v. Dragon Med. & Sci. Commc'ns, 118 F.3d 955, 971 (2d Cir.1997)). Alternatively, to hold Duran vicariously liable, plaintiff must show that Duran had the "right and ability to supervise" the infringing activities and that he had "an obvious and direct financial interest in the exploitation of [the] copyrighted materials." Id. (quoting Shapiro, Bernstein & Co. v. H.L. Green Co., 316 F.2d 304, 307 (2d Cir. 1963)). Here, plaintiff has neither pled nor offered any evidence that Duran knew that the fight would be broadcast at Kalua, or that he had any control over what was being shown on its television when Taggart visited. Accordingly, it is respectfully recommended that Duran not be held individually liable.

**II. Damages**

The Court must next consider the appropriate measure of damages to be awarded against Kalua. Although the allegations of a complaint pertaining to liability are deemed admitted upon entry of a default judgment, allegations relating to damages are not. Greyhound Exhibitgroup, 973 F.2d at 158. Plaintiff instead must provide evidence to substantiate its request for damages, and it is within the Court's discretion to determine whether that burden has been met. See Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989); Top Rank Inc. v. Tacos Mexicanos, No. 01-CV-5977 (SJ), 2003 WL 21143072, at *4 (E.D.N.Y. Mar. 28, 2003).

    **A. Statutory Damages**

Rather than prove actual damages, plaintiff seeks to recover $10,000 in statutory damages pursuant to section 605(e)(3)(C)(i)(II), which provides for a minimum award of $1,000 for each violation and a maximum award of $10,000, "as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). In determining the amount of damages to award in similar cases, courts have considered the extent of the illicit financial gain obtained by the defendants, and many have based their damage calculations on the number of patrons in an establishment during the illegal broadcast. See, e.g., J&J Sports Prods., Inc. v. Guzman, No. 06-CV-6840 (NGG), 2008 WL 924755, at *3 (E.D.N.Y. Apr. 4, 2008); J&J Sports Prods., Inc. v. Perez, No. 06-CV-480 (JG), 2008 WL 905237, at *3 (E.D.N.Y. Mar. 5, 2008); J&J Sports Prods., Inc. v. Reales, No. 06-CV-479 (FB), 2007 WL 1300992, at *3 (E.D.N.Y. May 3, 2007). Although no consensus exists, some courts have required that taverns and restaurants pay $50

per customer. See, e.g., Guzman, 2008 WL 924755, at *3; Perez, 2008 WL 905237, at *3; Reales, 2007 WL 1300992, at *3. This Court considers that approach to be just. Therefore, Kalua should be ordered to pay $2,250 in statutory damages for its violation.

**B. Enhanced Damages**

Plaintiff also seeks to recover $100,000 in "enhanced damages" under section 605(e)(3)(C)(ii), which permits the Court to increase an award by up to that amount "in any case in which the court finds that the violation was committed wilfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). In this case, enhanced damages are warranted. There is no question that Kalua's illegal broadcast of the match was wilful and for financial gain; it is extremely unlikely that defendant could have received the broadcast without taking some affirmative step to intercept the signal, and Kalua exhibited the match in connection with the operation of that commercial establishment. See Compl. at ¶¶ 12-13, 16. Indeed, courts have awarded enhanced damages in situations analogous to that presented here. See, e.g., J&J Sports Prods., Inc. v. Kosoria, No. 06 Civ. 2102 (KMK), 2007 WL 1599168, at *4 (S.D.N.Y. June 1, 2007) (imposing enhanced damages of $7,500 against a bar that illegally broadcast a boxing match); Entm't by J&J, Inc. v. Ramsarran, No. 01-CV-5223 (RR), 2002 WL 720480, at *2 (E.D.N.Y. Mar. 11, 2002) (imposing enhanced damages of $10,000 against a bar that illegally broadcast a boxing match).

Nevertheless, the $100,000 award that plaintiff seeks is excessive in these circumstances. In determining the appropriate amount of enhanced damages in cases involving

cable and satellite piracy by taverns and restaurants, courts ordinarily consider factors such as allegations of: (1) repeated violations over an extended period of time; (2) substantial unlawful monetary gains; (3) significant actual damages to plaintiff; (4) defendant's advertising for the intended broadcast of the event; and (5) defendant's imposition of a cover charge and/or premiums for food and drinks. See, e.g., Joe Hand Promotions, Inc v. Fofana, No. 06 Civ. 2099 (RJH), 2007 WL 2298372, at *5 (S.D.N.Y. Aug. 9, 2007); Kingvision Pay-Per-View, Ltd. v. Castillo Rest. Corp., No. 06-CV-617 (RJD), 2007 WL 841804, at *5 (E.D.N.Y. Jan. 16, 2007). While plaintiff has shown that Kalua wilfully broadcast the bout, plaintiff has not alleged or offered any direct evidence that Kalua specifically promoted itself as a venue to view the fight. Rather, the promise of exotic entertainment undoubtedly provided the enticement to enter for many of the patrons. Indeed, Taggart noted that a number of patrons were focused less on the bout and more on the topless dancing. See Tr. at 8. Plaintiff also offered no evidence that Kalua pirated other events.

Recently, courts in this circuit have concluded that $10,000 in enhanced damages was appropriate for commercial establishments that illegally exhibited boxing matches to approximately forty persons on one television set. See, e.g., J&J Sports Prods., Inc. v. Mendoza, No. 06-CV-6846 (ILG), 2008 WL 170199, at *8 (E.D.N.Y. Jan. 16, 2008) (imposing enhanced damages of $10,000 against a restaurant that illegally exhibited boxing match to forty patrons); Kingvision Pay-Per-View, Ltd. v. Rodriguez, No. 06 Civ. 4314 (RJH), 2007 WL 2262644, at *4 (S.D.N.Y. June 20, 2007) (imposing enhanced damages of $10,000 against a restaurant that illegally exhibited boxing match to forty patrons); Garden

City Boxing Club, Inc. v. Santacruz, No. 05-CV-63 (RJD), 2005 WL 2806251, at *4 (E.D.N.Y. Sept. 20, 2005) (imposing enhanced damages of $10,000 against a bar that illegally exhibited boxing match to thirty-eight patrons). As in those cases, Kalua exhibited the match on one television set and had the additional opportunity to benefit commercially from drink sales during the match. Taking these and the above considerations into account, this Court recommends the imposition of $10,000 in enhanced damages, and not the maximum amount of enhanced damages.

**C. Attorneys' Fees and Costs**

Plaintiff also requests an award of costs and reasonable attorneys' fees pursuant to section 605(e)(3)(B)(iii), which provides that the Court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii). In support of plaintiff's fee request, counsel has submitted the affidavit of Paul J. Hooten, Esq., setting forth the nature of the services rendered, the hourly rate charged, the date, and the amount of time spent on each task. Specifically, counsel's affidavit lists two entries totaling three hours of work by an attorney with a billing rate of $200 per hour, and four entries totaling two hours spent by a paralegal, billed at the rate of $50 per hour. Affidavit of Paul Hooten ("Hooten Aff.") filed May 15, 2008 at ¶ 4.

The three hours for which counsel seeks compensation at $200 per hour is somewhat excessive for what amounts essentially to the preparation of boilerplate submissions. The papers filed in this action, including the complaint, affidavits, and memorandum of law, are virtually identical to those filed by this attorney in other actions in this district. Compare

Plaintiff's Memorandum of Law In Support of Request For Judgment By Default ("Pl. Mem."), with Plaintiff's Memorandum of Law In Support of Request for Default, filed in Garden City Boxing Club, Inc. v. Coatzingo Corp., 07-CV-3846 (ILG) (E.D.N.Y. Mar. 3, 2008). Furthermore, the filings are riddled with errors, including ones that appear to reflect facts relating to other cases. See, e.g., Pl. Mem. at 15 (referring to the investigator as "Sean Fischler"); id. at 10-11 (referring to the late Jack Valenti as the current chairman and chief executive officer of the Motion Picture Export Association of America). For these reasons, a reduction to two compensable hours is appropriate. The rates charged and amount of time expended are otherwise reasonable. Accordingly, this Court respectfully recommends that plaintiff be awarded $500 in attorneys' fees.

Counsel's affidavit also seeks reimbursement for filing fees of $350, plus service of process fees of $120. Hooten Aff. at ¶ 4. Based on the supporting affidavits, this Court finds the $470 for service of process and filing fees to be reasonable, and therefore respectfully recommends that plaintiff be awarded $970 in total litigation costs from Kalua.

## CONCLUSION

For the foregoing reasons, it is the recommendation of this Court that judgment be vacated as to defendant Duran, and that plaintiff be awarded $2,250 in statutory damages, plus an additional $10,000 in enhanced damages, and $970 in attorneys' fees and costs, for a total award of $13,220 against defendant Kalua.

Any objections to the recommendations contained herein must be filed with Judge Mauskopf on or before June 25, 2008. Failure to file objections in a timely manner may waive

a right to appeal the District Court order.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to transmit a copy of this Order via ECF to plaintiff's counsel and to send copies, via Federal Express, to defendants at the following addresses:

> 143-08 94th Corp.
> d/b/a Kalua Restaurant & Lounge
> a/k/a Kalua Cabaret
> 143-08 94th Avenue
> Jamaica, NY 11435
>    Attn:  Managing Agent
>
> Roger Duran
> 851 Wyckoff Avenue, Apt. 12
> Second Floor
> Ridgewood, NY 11385

**SO ORDERED.**

**Dated:  Brooklyn, New York
  June 13, 2008**

>                     **ROANNE L. MANN
>                     UNITED STATES MAGISTRATE JUDGE**